**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

OTHMAN ABDELMOUMEN, an individual,

PLAINTIFF,

v.

TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, a foreign non-profit corporation,

DEFENDANT.

---

# VERIFIED COMPLAINT

---

COMES NOW the Plaintiff, OTHMAN ABDELMOUMEN, by and through his undersigned counsel at the law offices of Bryan E. Kuhn, Counselor at Law, P.C., and submits his Verified Complaint against Defendant, TEACHERS INSURANCE AND ANNUITY ASSOCATION OF AMERICA, a foreign non-profit corporation, alleging as follows:

## INTRODUCTION

1. This is an employment discrimination suit brought by a job applicant who was not hired for an open position for which he was highly qualified in violation of state and federal law. Plaintiff was provided a December 16, 2013 start date after completing an interview and a rigorous background check. On November 27, 2013, Plaintiff attended a meeting with two current employees of Defendant wherein his religion and national origin were discussed. Following that meeting, Plaintiff was not contacted again by the Defendant. After Plaintiff

repeatedly contacted the organization, he was finally informed that he was no longer eligible for employment. The job remained open and was ultimately filled by someone who was not within Plaintiff's protected classes. Plaintiff asserts claims of racial and religious discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq.* ("Title VII"). Plaintiff further asserts a claims of racial and religious discrimination under the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401, *et seq*. ("CADA"). Finally, Plaintiff asserts state law claims against Defendant for fraudulent misrepresentation and *promissory estoppel.*

**PARTIES**

2. The Plaintiff, OTHMAN ABDELMOUMEN (hereinafter "Plaintiff"), is a citizen of Arapahoe County who presently resides at 1645 South Iola Street, Apt. 205, Aurora Colorado 80012.

3. The Defendant, TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA, (hereinafter "Defendant,") is a New York Corporation with a principal place of business at 730 Third Avenue, New York, New York, 10017, doing business as a foreign non-profit corporation in Colorado, with a registered agent located at 1560 Broadway, Denver, Colorado 80202.

**JURISDICTION AND VENUE**

4. This Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331, because the instant action revolves around federal questions arising between the Parties.

5. The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

6. In addition, this Court has jurisdiction over the Defendant as the complained of unlawful employment practices took place in Colorado and the Defendant maintains substantial, ongoing business operation(s) in this state.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful were committed in the District of Colorado.

8. At all relevant times, TIAA was covered by the definitions of "employer" set forth in 42 U.S.C. § 2000e(b) of Title VII and in Colo. Rev. Stat. § 24-34-401(3) of the CADA.

## ADMINISTRATIVE PROCEDURES

9. Plaintiff satisfied his statutory obligation to exhaust administrative remedies by timely filing a formal Charge of Discrimination on January 14, 2014, regarding the alleged discriminatory conduct of Defendant.

10. On December 9, 2015, Plaintiff received the Notice of Right to Sue and brings his Verified Complaint within ninety (90) days of having received that notice.

## FACTUAL ALLEGATIONS

11. Plaintiff is Muslim and from Algeria.

12. Plaintiff has a Bachelor's Degree in Business and Finance and a Master's Degree in Business Administration ("MBA") with a focus on Finance and Accounting.

13. Plaintiff is also a Certified Financial Planner candidate.

14. The financial services industry is subject to compliance regulations promulgated by the Financial Industry Regulation Authority ("FINRA").

15. All securities professionals associated with a broker-dealer, including salespersons, must register with FINRA.

16. As part of the registration/licensing process, FINRA administers mandatory examinations on which the candidates must demonstrate proficiency in the areas in which they will work, prior to engaging in the activity.

17. Plaintiff became a registered Investment Advisor after successfully completing his General Securities Representative Exam (“FINRA Series 7”) as well as the Uniform Combined State Law Examination (“FINRA Series 66”).

18. On September 26, 2013, Plaintiff was contacted by a representative of Defendant, Kimberly Dobbs (Supervisor, Talent Acquisition, Human Resources) via an email which stated that she received his resume and he was eligible to apply for the position of Registered Consultant.

19. That afternoon, Plaintiff applied online for the position with Defendant of Registered Retirement Consultant, Inbound (Denver).

20. On October 18, 2013, Ms. Dobbs contacted Plaintiff again via email and stated that the start date for the upcoming job was November 25, 2013, and that she was scheduling phone interviews for the next week.

21. On November 2, 2013, Ms. Dobbs contacted Plaintiff for a third time and stated, “[I] have looked through your online application with TIAA-CREF again and wanted to reach out one more time to see if you may be interested in scheduling a phone interview.”

22. Plaintiff responded on November 3, 2013, stating that he was overseas on a personal matter but would like to interview when he returned on November 15, 2013.

23. Ms. Dobbs responded that she had a position open with an available start date in December instead of November and to contact her for a phone interview upon his return.

24. On November 6, 2013, Plaintiff received an emailed invitation to a “drop-in” event for potential candidates to discuss current and future career opportunities with Defendant.

25. Plaintiff had a phone interview with Ms. Dobbs and discussed his employment history therein.

26. At the end of the interview, Mr. Dobbs told Plaintiff that she would “give him the opportunity to work for TIAA” and that his start date would be December 16, 2013.

27. On November 19, 2013, Ms. Dobbs provided a username and password for a Candidate Sales Assessment, which Plaintiff completed.

28. Also on November 19, 2013, Plaintiff completed a Consumer Report/Investigative Consumer Report (Including Substance-Abuse Testing/Drug Testing) Disclosure and Release of Information Authorization.

29. Plaintiff also completed a Background Screening and Reference Verification form and a Fair Credit Reporting Act (“FRCA”) Form.

30. On November 25, 2013, Plaintiff received an emailed request for “pre-employment screening,” and was issued a temporary username and password.

31. Plaintiff completed the pre-employment screening form, as well an Applicant Certification and Authorization form.

32. On November 25, 2013, Plaintiff completed a Disclosure and Authorization Form.

33. Further, Plaintiff completed a Securities Registration & Insurance Licensing, Pre-Hire Consent form to confirm the status of his investment license.

34. For each new job or information change, FINRA registered Investment Advisors have a continuing obligation to complete or amend a Uniform Application for Securities Industry Registration or Transfer form, commonly referred to as a Form U4.

35. The Form U4 collects administrative information such as residential history, employment address, outside business activities, and the disclosure of information such as criminal, civil, and judicial events.

36. The Investment Advisor's information is then compiled and provided to prospective employers upon request.

37. In the financial services industry, Form U4 results are widely known to be inaccurate.

38. In July 2015, FINRA implemented changes that required member firms to investigate the background of applicants for registration by confirming the completeness and accuracy of the information provided on an individual's Form U4.

39. To maintain compliance, member firms are now required to adopt written procedures for verifying the information on a Form U4 including, at minimum, a national search of "reasonably available public records."

40. On November 26, 2013, Plaintiff's Form U4 results arrived and inaccurately included companies where Plaintiff had never actually worked or received compensation.

41. Throughout his career, Plaintiff had four (4) jobs in the financial industry, with the following companies: Nationwide Securities, Thrivent Investment Management, MetLife Securities, and Ameriprise Financial Services.

42. Plaintiff also worked a temporary job for one (1) month at Advanced Assets Group in December 2010.

43. Defendant claimed that Plaintiff's Form U4 showed eight (8) jobs in the industry including: First Command Financial Planning from November 18, 2008 to January 23, 2009, Waddell & Reed from June 2, 2008 to June 12, 2008, and again from May 29, 2007 to September 19, 2007.

44. During his phone interview with Ms. Dobbs in mid-November, Plaintiff stressed that his Form U4 was incorrect and urged Defendant to contact the companies listed to verify his job history and references.

45. Ms. Dobbs assured Plaintiff that his job history was not a concern and that based on his experience, education, and licenses, he was more than qualified to do the job.

46. Upon information and belief, Defendant failed to contact any of the companies listed on Plaintiff's Form U4 to clarify his employment situation with those organizations.

47. After receiving Plaintiff's Form U4 results, TIAA moved forward with the hiring process and submitted a request for his financial, criminal, and DMV background check.

48. Similarly, after the Form U4 results were released, Plaintiff was informed that he would have an in-person meeting with two of Defendant's employees to discuss hypothetical situations.

49. Plaintiff was told that the meeting would not having any bearing on the hiring process.

50. On November 27, 2013, Plaintiff participated in the meeting with Terry Yon (Team Manager) and Kevin Wimberly (Lead Consultant).

51. Initially during the meeting, the three (3) men discussed hypothetical situations of what Plaintiff might encounter during phone calls with prospective customers.

52. At the end of the meeting, Mr. Yon asked Plaintiff, "You are from Algeria, right?"

53. Plaintiff replied that he was from Algeria.

54. Mr. Yon then asked, "That is Muslim, right?"

55. Plaintiff agreed that he, as well as majority of that country, was Muslim.

56. Mr. Yon then stated, "I am from Washington D.C. and my father was in the military."

57. On December 2, 2013, Plaintiff's criminal and DMV background check results arrived without blemish.

58. Plaintiff reached out to Ms. Dobbs on December 4, 2013 about the position and she said that she, "hoped to know by Friday."

59. On December 9, 2013, Plaintiff contacted Ms. Dobbs requesting more information about his upcoming start date.

60. Finally, on December 11, 2013, Ms. Dobbs stated that, "the hiring managers decided to move forward with other candidates."

61. Plaintiff filed Charge of Discrimination number 541-2014-00497 on January 14, 2014 in which he alleged that he was discriminated against based on his age, religion, and national origin.

62. Defendant told the EEOC that Plaintiff was ultimately not hired because his work history did not inspire confidence and trust in his skill set, reliability and ability to deliver sound financial advice to TIAA's clients.

63. Further, Defendant stated that "but for his unstable work history evidenced by eight jobs just since 2007, the organization, having advanced him in the process following two job interviews, would have extended a job offer to him."

64. Plaintiff's work history was listed on his resume reviewed by Ms. Dobbs in September and November 2013, discussed during his phone interview with Ms. Dobbs in mid-November, again detailed in a Form U4 snapshot delivered to TIAA on November 25, 2013, and was never stated as a concern until March 31, 2014, and then only in response to the Charge of Discrimination.

65. On October 29, 2015, the EEOC issued a Determination in which it found that there is reasonable cause to believe that there is a violation of Title VII and the ADEA, in that the "Charging Party was not hired because of his national origin, religion, and age."

66. The EEOC issued a Notice of Right to Sue on December 9, 2015.

## FIRST CLAIM FOR RELIEF
*(Discrimination in Violation of Title VII)*

67. Plaintiff incorporates by reference paragraphs 1 through 66 as if fully set forth herein.

68. Plaintiff belongs to protected classes based on his national origin and religion.

69. Plaintiff was qualified for the job with Defendant.

70. Defendant failed to hire Plaintiff for the job despite his qualifications.

71. The position was ultimately filled by someone who was not from Algeria and not Muslim.

72. Defendant was motivated to discriminate against Plaintiff, in part, by its attitudes about national origin, religion, and age.

73. Defendant's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of his rights.

74. Defendant's conduct discriminated against Plaintiff on the basis of his national origin, and religion in violation of Title VII.

75. As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**SECOND CLAIM FOR RELIEF**
*(Discrimination in Violation of the CADA)*

76. Plaintiff incorporates by reference paragraphs 1 through 75 as if fully set forth herein.

77. Defendant failed to hire Plaintiff for a job for which he was well qualified.

78. Defendant's actions toward Plaintiff were done knowingly and intentionally or with reckless disregard of his rights.

79. Defendant's conduct discriminated against Plaintiff on the basis of his national origin and religion in violation of the CADA.

80. As a direct, proximate and foreseeable result of the Defendant's intentional actions in this regard, the Plaintiff suffered damages, including lost wages and benefits, diminished reputation and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

**THIRD CLAIM FOR RELIEF**
*(Fraudulent Misrepresentation)*

81. Plaintiff incorporates by reference paragraphs 1 through 80 as if fully set forth herein.

82. Acting on behalf of Defendant, Kim Dobbs knowingly made false representations of material facts including that Plaintiff had a job with TIAA, his work history would be appropriately researched, and his Form U4 results were not concerning to the company.

83. Ms. Dobbs representations induced Plaintiff to continue the application process.

84. Ms. Dobbs intended for Plaintiff to act upon her representations.

85. Plaintiff justifiably relied upon the information that was provided to him by Ms. Dobbs by continuing the job application process, turning down other job offers, and preparing for a December 16, 2013 start date.

86. As a direct and proximate result of such false representations, Plaintiff has suffered and continues to suffer a loss of wages and benefits, a loss of job, loss of career opportunities and interruption of career path, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

**FOURTH CLAIM FOR RELIEF**
*(Promissory Estoppel)*

87. Plaintiff incorporates by reference paragraphs 1 through 86 as if fully set forth herein.

88. On behalf of Defendant, Kim Dobbs promised Plaintiff that he had a job opportunity with TIAA, his work history would be appropriately researched, and his Form U4 results were not concerning to the company.

89. Defendant should have expected Plaintiff to rely on Ms. Dobbs' promises.

90. Plaintiff reasonably relied on these promises to his detriment.

91. As a direct and proximate result of Defendant's failure to uphold the promise, Plaintiff has suffered and continues to suffer a loss of wages and benefits, a loss of job, loss of career opportunities and interruption of career path, emotional distress, inconvenience, mental anguish, loss of enjoyment of life and other consequential damages.

**REQUEST FOR RELIEF**

WHEREFORE, the Plaintiff respectfully prays for a judgment to be entered in his favor and against Defendant, and Order the following relief:

a. Reinstatement or front pay and benefits in lieu thereof;

b. Back pay, benefits, and other economic losses;

c. Compensatory damages, including but not limited to those for emotional distress

d. Punitive and exemplary damages as allowed by law;

e. Relevant statutory damages;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney and expert witness fees and costs as available by law; and,

h. Any such further relief allowable by law or as justice requires.

**JURY DEMAND**

The Plaintiff hereby demands a trial by jury of all issues so triable in the instant action.

Respectfully submitted on February 23, 2016.

BRYAN E. KUHN, COUNSELOR AT LAW, P.C.

*Original pleading bearing original signature maintained in the offices of Bryan E. Kuhn, Counselor at law, P.C.*

s/ *Bryan E. Kuhn*

Bryan E. Kuhn, Esq. #33642
Kate W. Beckman, Esq. #42416
1660 Lincoln Street, Suite 2330
Denver, Colorado 80264
(p) (303)424-4286 (f) (303)425-4013
Bryan.Kuhn@beklegal.com
Kate.Beckman@beklegal.com
ATTORNEYS FOR PLAINTIFF

# VERIFICATION

I declare under penalty of perjury that I have read this above Verified Complaint and the statements contained in it are true and correct to the best of my knowledge and belief.

Date: February 23, 2016

Othman Abdelmoumen

STATE OF COLORADO )
) ss.
COUNTY OF DENVER )

Subscribed under oath before me in the County of Denver, State of Colorado, this 23 day of February, 2016.

My commission expires on: 7/24/2019

Notary Public

LAINA MARIE SCHRODER
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20154028836
MY COMMISSION EXPIRES JULY 24, 2019